UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CHAD S. WILLIAMS a/k/a Shad S. Williams,

Plaintiff, 9:26-CV-0068 (ECC/CBF)

v.

THOMAS DELMAR, et al.,

Defendants.

---

APPEARANCES: OF COUNSEL:

CHAD S. WILLIAMS
Plaintiff, pro se
24-B-4203
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, NY 14411

HON. LETITIA JAMES
Attorney General of the State of New York
300 South State Street - Suite 300
Syracuse, NY 13202
Attorney for Defendants

JUDSON N. KNAPPEN
Assistant Attorney General

ELIZABETH C. COOMBE
United States District Judge

**DECISION AND ORDER**

## I. INTRODUCTION

In January 2026, pro se plaintiff Chad S. Williams ("plaintiff") commenced this action by submitting a complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), with an application to proceed in forma pauperis ("IFP"). Dkt. No. 1 ("Compl."); Dkt. No. 5 ("IFP Application"). The complaint asserted claims related to plaintiff's confinement at Mid-State Correctional

Facility ("Mid-State C.F."), in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Compl.

By Decision and Order entered on March 10, 2026 (the "March 2026 Order"), this Court granted plaintiff's IFP Application and reviewed the sufficiency of the complaint in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). Dkt. No. 8. On the basis of that review, the Court directed defendants to respond to plaintiff's First Amendment retaliation claim against defendant Sergeant Flack ("Flack") and plaintiff's Eighth Amendment excessive force and failure-to-intervene claims against defendants National Guardsman Wilder ("Wilder") and National Guardsman Calderson ("Calderson"). *Id.* at 22. The Court dismissed the remaining claims without prejudice. *Id.*

On March 30, 2026, plaintiff filed a motion for reconsideration of the March 2026 Order. Dkt. No. 11. In a Decision and Order entered on June 18, 2026 (the "June 2026 Order"), the Court denied plaintiff's request for reconsideration. Dkt. No. 23.

On July 6, 2026, defendants filed an answer to the complaint. Dkt. No. 26.

On July 20, 2026[1], the Court received plaintiff's amended complaint, which includes a second motion for reconsideration of the March 2026 Order. Dkt. No. 28 ("Am. Compl.").

## II. SUFFICIENCY OF AMENDED COMPLAINT

### A. Legal Standards

The amendment of pleadings is governed by Rule 15 of the Federal Rules of Civil Procedure. Rule 15(a)(1)(B) provides that a party may amend his pleading once as a matter of course within 21 days after service of a responsive pleading, and within other specified time limitations not relevant here. Fed. R. Civ. P. 15(a)(1)(B). Because plaintiff filed his

[1] Plaintiff executed his amended complaint on July 4, 2026. *See* Am. Compl. at 41.

amended complaint within 21 days of service of defendants' answer, it is an amended complaint as of right in accordance with Rule 15(a). The amended complaint is now the operative pleading.

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A was discussed at length in the March 2026 Order and will not be restated in this Decision and Order. *See* Dkt. No. 8 at 2-4.

**B. Summary of Amended Complaint[2]**

With the amended complaint, plaintiff identifies the following new defendants: Correctional Officer Kolowski ("Kolowski"), Correctional Officer Nicholas ("Nicholas")[3], Correctional Officer J. Solomondis ("Solomondis"), Correctional Officer D. Kilner ("Kilner"), and Correctional Officer C. Barnhart ("Barnhart"). *See* Am. Compl. at 1. The amended complaint also includes allegations against previously named defendants Superintendent Thomas Delmar ("Delmar"), Wilder, Calderson, and Flack. *See id.* The following facts are set forth as alleged by plaintiff in his amended complaint.

---

[2] The amended complaint includes 71 pages of exhibits. *See* Am. Compl. at 60-131. In the amended complaint, plaintiff incorporated, by reference, the same exhibits attached to the original complaint, but failed to actually attach the exhibits to the amended complaint. Although the amended complaint supersedes the complaint in its entirety, it is clear that plaintiff intended to attach the exhibits to his amended complaint. To require plaintiff to file an amended complaint that includes the original exhibits is, "an unnecessary procedural hoop that would waste resources and delay resolution of this action." *Separ v. Cnty. of Nassau*, No. 21 CV 00010, 2023 WL 8531495, at *3 (E.D.N.Y. Jan. 13, 2023). Because plaintiff is proceeding pro se, the Court will consider the exhibits and documentation attached to the original complaint as incorporated by reference in the amended complaint. To the extent that the exhibits are relevant or integral to the incidents described in the amended complaint, the Court will consider the exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

[3] While plaintiff includes Nicholas in the caption and list of parties, the amended complaint does not include any refer to Nicholas and plaintiff failed to allege that Nicholas was personally involved in any alleged constitutional violation. *See Cipriani v. Buffardi*, No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citation omitted); *see also Casino v. Rohl,* No. 14-CV-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014) (dismissing complaint since the plaintiff had not adequately pled the defendant's personal involvement in any of the constitutional deprivations alleged in the amended complaint).

On April 29, 2025, a non-party corrections officer "mistakenly packed" plaintiff's property, including original legal documents associated with plaintiff's writ of habeas corpus, with property belonging to another inmate. Am. Compl. at 13. Without "this original document," the Monroe County Clerk's Office was unable to move forward with plaintiff's "legitimate appeal." *Id*. Plaintiff believes "there was a strong likelihood that [he] would have prevailed in his habeas corpus [case]" and been "released from state custody[.]" *Id.* On May 9, 2025, plaintiff filed a Notice of Appeal with the Appellate Division, Fourth Department in a matter entitled *Williams v. Baxter, et al.,* 2024-0256 ("*Williams I*"). Am. Compl. at 117. With that submission, plaintiff appealed a February 1, 2024 Monroe County Order "dismissing the writ of habeas corpus." *Id*.

On May 16, 2025, plaintiff filed a Notice of Appeal with the Appellate Division, Fourth Department in a case entitled *People of State of New York v. Williams*, Index No. 23-6730 ("*Williams II*"). Am. Compl. at 116. Plaintiff appealed a judgment of conviction rendered against him in Genesee County Court on April 22, 2025. *Id*.

On August 17, 2025, at approximately 5:05 p.m., plaintiff "was walking back from the evening chow-run[ ] with multiple inmates in the rain" when he noticed a "white SUV" occupied by "several National Guards," including "two . . . in the front seat" who appeared to be "engaging in an inappropriate sex act." Am. Compl. at 8. "Seconds later, the National Guard [Official] that was seated in the front seat emerged from the SUV" and yelled, "hey you!" *Id*. at 9. Plaintiff did not know who the yelling was directed at, and "therefore[ ] kept walking in the rain, trying to make it back to the housing unit as quick as possible." *Id.*

Moments later, the white SUV "pulled up next to [plaintiff]" and one of the occupants

"yelled[,] 'stop walking[.]' " Am. Compl. at 9. The vehicle then pulled in front of plaintiff, and Wilder and Calderson exited. *Id*. One of these officials then "slammed [plaintiff] on the side of the SUV[, and] then immediately slammed [him] to the ground[.]" *Id*.

Thereafter, plaintiff "was taken to medical, where it was determined that [he] had a bru[i]se on his head" and bruises on his "leg and arm," along with "lower-back injuries." Am. Compl. at 10. Plaintiff then returned to his housing unit where a non-party "directed plaintiff to pack up[ ] because he was moving to 4-G[.]" *Id.* at 14; Dkt. No. 1-2 at 5. Once plaintiff arrived at the new housing unit, an inmate informed plaintiff that Kolowski told inmates to "jump" plaintiff. *Id.* Kolowski told inmates, "what yall [sic] waiting on get him, I'm going to turn my back[.]" *Id.* Kolowski "tried three more times to have the inmates in 4-G assault [plaintiff], . . . the inmates knew better" and did not assault him. *Id.*

In June 2025, plaintiff filed "proof of timel[y] service of the notice of appeal" in *Williams I.* Am. Compl. at 63.

On August 20, 2025, plaintiff filed a grievance regarding the assault. Am. Compl. at 10, 89.

One week later, plaintiff "went to medical" because he was experiencing increased head and back pain. Am. Compl. at 10. Upon arriving at the "desk area[,]" plaintiff encountered Flack, who "sent . . . plaintiff back to his housing unit without being seen by medical." *Id.*

Plaintiff was subsequently issued a misbehavior report, which charged him with violent conduct, creating a disturbance, and refusing a direct order. Am. Compl. at 10; Dkt. No. 1-2 at 2. On September 1, 2025, plaintiff attended a disciplinary hearing associated with the misbehavior report, where he was "found guilty on all charges[.]" Am. Compl. at 10.

Plaintiff "was later informed" by a non-party that he "was being retaliated against" for filing a class action lawsuit. *Id.* at 11.

Flack "wrongfully confiscated [plaintiff's] legal materials" and his family members "called the facility to inform them that [plaintiff] had a deadline in federal court for his writ of habeas corpus case" that required his possession of the confiscated materials. Am. Compl. at 11. Flack did not return the materials. *Id.* Instead, plaintiff was issued a Tier III misbehavior report by an unidentified official, and Flack informed plaintiff that he had "killed a[n] inmate before" to suggest "that such a thing could happen to [plaintiff.]" *Id.*

In November 2025, plaintiff filed a motion to compel in an action in the United States District Court for the Western District of New York ("Western District"), *Williams v. Delmar*, No. 25-CV-579 ("*Williams III*"). Am. Compl. at 65-73.

On January 2, 2026, Flack "had Housing Unit Officer Kolowski call [plaintiff] to the hallway of 4-G and pat frisk [plaintiff] for no reason[.]" Am. Compl. at 11. Flack then "confiscated the tablet [plaintiff] was using for . . . legal work." *Id.* Before this date, defendant Flack also "wrongfully kicked . . . plaintiff out of the law library[.]" *Id.* at 12.

On January 6, 2026, plaintiff executed the complaint in this action. See Compl. at 11. The complaint was mailed to the Court on January 12, 2026. Dkt. No. 1-4 at 1.

In April 2026, plaintiff executed a document entitled "Supplementary" in a case entitled *Williams v. Delmar, et al.*, Docket No. 26-490 ("*Williams IV*"). Am. Compl. at 106-107.

In May 2026, a non-party told plaintiff that Delmar conducted "secret" meetings with facility members regarding "solutions" to "deal with" plaintiff, who had previously spearheaded a class action in the Northern District of New York entitled *Williams, et al., v Delmar, et al.*,

No. 25-CV-865 (AMN/MJK) (N.D.N.Y. filed June 30, 2025) ("*Williams V*"). Am. Compl. at 15-16, 44.

On May 18, 2026, at approximately 12:50 p.m., plaintiff was escorted from his "bunk" to an outside hallway, in 4-G dorm, so that his "cube area" could be searched. Am. Compl. at 18. Solomondis allegedly discovered a "metal object" in plaintiff's locker. *Id*. Solomondis would not allow plaintiff to see what he found and "pulled away" from his view. *Id*. at 19. Solomondis transferred the alleged contraband to Kilner. *Id.* Plaintiff received a misbehavior report charging him with possessing a weapon. Am. Compl. at 19, 61. The report was issued by Kilner and endorsed by Solomondis. *Id*. at 61. Kilner falsely reported that the contraband was secured in accordance with Directive 4910-A. *Id.* at 19-20, 61. "Minutes later," Solomondis handcuffed plaintiff. *Id*. at 20. Kilner escorted plaintiff to the hallway. *Id.* at 21. Plaintiff asked Kilner to describe the weapon and Kilner reported that it was a "shiny – silver – cutting type weapon" with "brand new tape as the handle." Am. Compl. at 21. Plaintiff told Kilner that this was "not the object [he had] seen in Solomondis' hand. *Id.*

On May 28, 2026, Barnhart "lied" and claimed that plaintiff refused to attend his Tier III hearing. Am. Compl. at 24, 26. As a result of the "weapon charge," plaintiff was confined in to the Special Housing Unit for 180 days with a 129-day loss of recreation and commissary, and 149-day loss of package privileges. *Id*. at 26, 127-128.

Construing the amended complaint liberally[4], plaintiff alleges the following: (1) First Amendment retaliation claims against Flack, Kolowski, and Delmar; (2) Eighth Amendment

[4] The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set

excessive force and failure-to-intervene claims against Wilder and Calderson; (3) First Amendment access-to-court claims; (4) Eighth Amendment medical indifference claim against Flack; (5) Eighth Amendment claims against Kolowski related to inciting violence; (6) Fourth Amendment claim related to the search of plaintiff's cube; (7) constitutional claims related to the failure to adhere to DOCCS' Directive 4910A; and (8) Fourteenth Amendment due process claims against Solomondis, Kilner, and Barnhart. *See generally* Am. Compl. Plaintiff seeks monetary damages and injunctive relief. *Id*. at 33-34.

**C. Analysis**

**1. Previous Claims**

In the March 2026 Order, the Court found that the First Amendment retaliation claim against Flack and Eighth Amendment excessive force and failure-to-intervene claims against Wilder and Calderson survived review and required a response. *See* Dkt. No. 8 at 22. These claims are repeated and realleged in the amended complaint. For the reasons set forth in the March 2026 Order, defendants are directed to respond to these claims.

**2. New Retaliation Claims**

The law related to retaliation claims was discussed in the March 2026 Order and will not be restated here. *See* Dkt. No. 8 at 10-11. With the amended complaint, plaintiff asserts new retaliation claims against Kolowski and Delmar. *See* Am. Compl. at 29-33. Plaintiff alleges that, after he filed the within action, Kolowski "kept trying to get inmates to assault" him. *Id.* at 30. Even assuming plaintiff engaged in protected conduct, of which Kolowski was aware, plaintiff has not sufficiently alleged that he suffered any adverse action. "[C]ourts

---

out in his pleadings."); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

within the Second Circuit have held that the incitement of harm, on its own, does not satisfy the second prong of a retaliation claim." *Woodward v. Lytle*, No. 9:16-CV-1174 (NAM/DEP), 2017 WL 9511175, at *7 (N.D.N.Y. Aug. 15, 2017) (citations omitted), *report and recommendation adopted*, 2017 WL 4221074 (N.D.N.Y. Sept. 22, 2017). Here, plaintiff does not allege that he was actually assaulted or attacked as a result of any comments attributed to Kolowski. Moreover, the amended complaint lacks any facts related to Kolowski's conduct including dates and times he allegedly attempted to incite violence or the identity of the inmates who overheard his comments. *See Oneil v. Rodriguez*, No. 18-CV-3287, 2020 WL 5820548, at *6 (E.D.N.Y. Sept. 30, 2020) (dismissing retaliation claim because the allegations about threats lacked detail and the claim that the defendant directed an inmate to assault him or made comments intended to incite inmates are insufficient to state a First Amendment retaliation claim).

Plaintiff also claims that Delmar conducted "repeated secret meetings" to "deal with the relentless litigation" and "spearheaded class action" in the Northern District. Am. Compl. at 44. Even assuming plaintiff engaged in protected conduct, of which Delmar was aware, the pleading does not suggest that plaintiff suffered any adverse action as a result of "repeated secret meetings." Moreover, the pleading lacks facts related to dates or times of these alleged meetings. Indeed, plaintiff's claims are entirely conclusory and are based solely upon statements made by a non-party official. Accordingly, plaintiff's retaliation claims against Kolowsk and Delmar are dismissed.[5]

[5] To the extent that plaintiff attempts to assert additional retaliation claims related to his access to the law library and his "current solitary confinement," *see* Am. Compl. at 31-32, those claims are dismissed. The amended complaint lacks any facts related to these alleged constitutional violations or facts suggesting that any named defendant was personally involved in any such incidents.

**3. First Amendment – Access-to-Court**

The law related to access-to-court claims was discussed in the March 2026 Order and will not be restated here. *See* Dkt. No. 8 at 11-15. In the March 2026 Order, the Court dismissed these claims reasoning:

> As an initial matter, the complaint only vaguely alleges that plaintiff was unable to pursue his criminal appeal as a result of not having access to original materials. Plaintiff, however, does not allege that he attempted to address this matter with the court, or that his action was dismissed. In addition, the complaint does not indicate the outcome of any of plaintiff's other court proceedings, let alone allege that these proceedings were dismissed as a result of his inability to access the law library or send mail..").
>
> [. . . ] while plaintiff vaguely alleges that he believes his criminal appeal was meritorious, he has not provided any details regarding the nature of the underlying arguments in order for the Court to apply the "nonfrivolous" test and potentially infer that "the 'arguable' nature of the underlying claim is more than hope."

Dkt. No. 8 at 14.

While plaintiff was provided with an opportunity to amend the pleading, the amended complaint does not cure the deficiencies addressed in the March 2026 Order. The amended pleading lacks facts suggesting that plaintiff suffered any "actual injury" in any criminal or civil actions due to any action by any named defendant. *See Lafferty v. Virts*, No. 23-CV-358, 2024 WL 4134254, at *5 (W.D.N.Y. Sept. 10, 2024); *see also, e.g., Chalif v. Spitzer,* No. 05-CV-1355, 2008 WL 1848650, at *11 (Apr. 23, 2008) ("Since plaintiff's complaint fails to allege any prejudice in the form of interference with his pursuit of a non-frivolous legal claim, this provides an independent basis for dismissal[.]"). While plaintiff asserts that his habeas corpus petition was dismissed, that dismissal does not provide a basis for a First Amendment access-to-court claim as it occurred over a year prior to the incidents described in the amended complaint. According to the documents attached to the amended complaint, in May

2025, plaintiff appealed the February 2024 dismissal of his "writ of habeas corpus" entered by the Clerk of Monroe County on February 1, 2024. *See* Am. Compl. at 117.

Moreover, the exhibits contradict any allegation that plaintiff was unable to access the courts from April 2025 until August 2026. During that time, plaintiff submitted several filings in at least five different actions in various courts including the Appellate Division, Fourth Department; Northern District; Western District; and the United States Court of Appeals for the Second Circuit. *See* Am. Compl. at 63-73, 106-107, 116, 117.

Finally, while plaintiff alleges that Flack "wrongfully confiscated" and refused to return his legal materials and "wrongfully kicked plaintiff out of the law library," plaintiff does not provide any facts related to when or what materials were confiscated. See Am. Compl. at 11-12. Further, plaintiff alleges that, on January 2, 2026, Flack "confiscated the tablet [plaintiff] was using for . . . legal work," *see id.,* but he does not describe the incident any further or attribute any actual injury to this action.

Thus, for the reasons set forth in the March 2026 Order and here, plaintiff's First Amendment claims related to his access to the court are dismissed.

**4. Eighth Amendment – Medical Indifference**

The law related to medical indifference claims was discussed in the March 2026 Order and will not be restated here. *See* Dkt. No. 8 at 16-19. In the March 2026 Order, the Court dismissed the medical indifference claims against Flack reasoning:

> Here, the complaint alleges that plaintiff "went to medical" one week after he was allegedly assaulted because he was experiencing increased "head pain[,]" but defendant Flack would not allow him to be seen. Compl. at 6.
>
> The complaint does not provide any details regarding the nature or severity of plaintiff's "head pain." Thus, the Court is unable to plausibly infer that plaintiff was suffering from an objectively serious

> condition when he was turned away from a medical evaluation by defendant Flack. *Vasquez v. Cty. of Rockland*, No. 13-CV-5632, 2020 WL 883514, at *13 (S.D.N.Y. Feb. 21, 2020) (dizziness and headaches, difficulty sleeping, post-traumatic stress, sexual dysfunction, and scratches that had healed but may have left a blemish were not sufficiently serious); *Sledge v. Fein*, No. 11-CV-7450, 2012 WL 4761582, at *5 (S.D.N.Y. Aug. 2, 2012) (noting that courts have "held that terrible and extreme headaches and swelling do not satisfy the objective component of an Eighth Amendment claim"); *Bradley v. Rell*, 703 F. Supp. 2d. 109, 121-22 (N.D.N.Y. 2010) (concluding that "a headache and blurry vision; [ ] swelling and bruising around his head; and [ ] an abrasion to his right lower leg from the dog bite[ ]" were not serious medical needs); *Dallio v. Hebert,* 678 F. Supp. 2d 35, 44-45 (N.D.N.Y.2009) (holding that two black eyes, bruising in kidney area, kick marks and open lacerations on knees, bruising and red spots on thigh, lacerations on arms and wrists, a headache, and numbness in hands and fingers are not "conditions of urgency that may produce death, degeneration, or extreme pain") (collecting cases).
>
> Furthermore, the complaint does not indicate what plaintiff stated to defendant Flack regarding his condition or what defendant Flack stated to plaintiff in allegedly turning him away for medical treatment. In addition, the complaint does not allege that plaintiff had a scheduled medical appointment or requested emergency sick call before arriving at the medical facility. Nor does the complaint allege that defendant Flack took any steps to prevent plaintiff from receiving medical treatment thereafter. Thus, the Court also has no basis to plausibly infer that defendant Flack denied plaintiff access to medical treatment out of deliberate indifference to his well-being.

Dkt. No. 8 at 19-20.

Plaintiff did not remedy the deficiencies in this claim with the new pleading. In the amended complaint, plaintiff reiterates the same facts and restates this claim in the same manner. Thus, for the reasons set forth in the March 2026 Order, the medical indifference claim is dismissed.

**5. Eighth Amendment – Inciting Violence**

Allegations that a correctional officer made statements intending to incite others to attack an inmate may state a claim under the Eighth Amendment. *See Phillips v. Cortland Cty. Sheriff's Dep't*, No. 5:13-CV-00955 (LEK/TWD), 2013 WL 5464908, at *4 (N.D.N.Y. Sept. 30, 2013) (citing, among others, *Young v. Coughlin*, No. 93 CIV. 0262, 1998 WL 32518, at * 7 (S.D.N.Y. Jan. 29, 1998) (holding that correctional officers "sexually suggestive" comments to the plaintiff in the presence of large number of other inmates may state an Eighth Amendment claim if they incited other inmates to assault the plaintiff); *see also Jhagroo v. Brown*, No. 16 CV 3426, 2020 WL 419450, at *7 (S.D.N.Y. Jan. 27, 2020) ("[T]here is no question that instructing or encouraging other [prisoners] to attack an inmate poses an objectively serious risk of harm.") (citation omitted). "To state such a claim, a plaintiff must show that prison officials failed to act reasonably to ensure a safe environment when they were aware of the existence of a significant risk of injury, whether or not an actual attack occurred." *Smith v. New York*, No. 23-CV-7613, 2023 WL 7133218, at *4 (S.D.N.Y. Oct. 27, 2023) (citations omitted). However, "[a]t a minimum, the complaint must allege facts suggesting that the plaintiff suffered physical injury or that the threat of such injury was imminent; conclusory assertions are insufficient." *Id*. (citations omitted); *see also Maldonado v. John*, No. 21-CV-3719, 2021 WL 3292575, at *6 (S.D.N.Y. Aug. 2, 2021) (noting that "vague or generalized allegations that a prisoner fears assault, without any plausible factual basis for concluding that a substantial risk of harm exists, are insufficient to state a claim") (citations omitted).

Here, plaintiff alleges that Kolowski violated his Eighth Amendment rights because he attempted to incite unidentified inmates to assault plaintiff. *See generally* Am. Compl. However, plaintiff's vague and ambiguous allegations fail to allege how and when Kolowski

"directed" unidentified inmates to attack plaintiff. Moreover, plaintiff does not allege that he faced any "real risk of physical injury" because he does not contend that he suffered any physical injury or that he was threatened with injury as a result of Kolowski's alleged statements . *Cf. Mirabella v. O'Keena*n, No. 15-CV-142S, 2018 WL 3659526, at *4 (W.D.N.Y. Aug. 2, 2018) (comparing caselaw and noting that the plaintiff "actually suffered such an attack, resulting in an injury and a permanent facial scar" and thus, the allegations satisfied both prongs of the Eighth Amendment analysis).

Accordingly, plaintiff's Eighth Amendment claims against Kolowski are dismissed.

**6. Fourth Amendment**

The Fourth Amendment prohibits the government from conducting unreasonable searches. All searches conducted within a prison must be reasonable. *See Hodges v. Stanley*, 712 F.2d 34, 35-36 (2d Cir. 1983) (citation omitted). However, the Fourth Amendment is inapplicable to the unwarranted search of an inmate's prison cell, as inmates have no reasonable expectation of privacy in such a place. *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("hold[ing] that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell ..." and thus the Fourth Amendment does not apply to cell searches); *see also U.S. v. McBean*, No. 24 CR 541, 2025 WL 1113086, at *10 (S.D.N.Y. Apr. 15, 2025) (holding that even cell searched conducted solely for harassment, retaliatory, or arbitrary do not implicate the Fourth Amendment) (collecting cases).

Accordingly, plaintiff's Fourth Amendment claim is dismissed.

**7. Violations of DOCCS' Directive**

A Section 1983 claim brought in federal court is not the appropriate vehicle by which to raise violations of prison regulations. *See Hyman v. Holder*, No. 96-CV-7748, 2001 WL 262665, at *6 (S.D.N.Y. Mar. 15, 2001) (holding that allegations of prison regulation violations "are not cognizable under [Section] 1983" because "Section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law principles"); *see also Sanders v. Gifford*, No. 11-CV-0326 (LEK/RFT), 2014 WL 5662775, at *4 (N.D.N.Y. Nov. 4, 2014) (holding that failure to follow a DOCCS' directive does not give rise to a § 1983 claim). Accordingly, to the extent that plaintiff argues that any defendant violated his constitutional rights because they failed to comply with DOCCS' directives, the claim is dismissed.

**8. Fourteenth Amendment – Due Process**

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const., amend. XIV. To show a procedural due process violation in a Section 1983 action, a plaintiff must demonstrate that he had a protected liberty interest and that he was deprived of that liberty interest without due process of law. *See Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001); *Tellier v. Fields*, 280 F.3d 69, 79–80 (2d Cir. 2000). A prisoner's protected liberty interest is implicated where the punishment at issue imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The prevailing view in this Circuit is that, by its regulatory scheme, the State of New York has created a liberty interest in remaining free from disciplinary confinement. *See, e.g., LaBounty v. Coombe*, No. 95-CV-2617, 2001 WL 1658245, at *6 (S.D.N.Y. Dec. 26, 2001); *Alvarez v. Coughlin*, No. 94-CV-0985, 2001 WL 118598, at *6

(N.D.N.Y. Feb. 6, 2001). Accordingly, to find that plaintiff's complaint states a cognizable procedural due process claim, the Court must inquire whether the allegations related to the conditions of plaintiff's disciplinary confinement rise to the level of an atypical and significant hardship under *Sandin*.

To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility, as well as those in administrative and protective confinement. *Welch v. Bartlett,* 196 F.3d 389, 393 (2d Cir. 1999); *Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) ("To be actionable, the liberty interest must subject the prisoner to 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" (quoting *Sandin*, 515 U.S. at 484)). When assessing the severity of the hardship imposed, a court should consider both the duration and the conditions of the confinement, where appropriate. *Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998).

With respect to the procedural safeguards, "[w]hen a prison disciplinary hearing may impose a punishment sufficient to trigger due process protections, 'the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.'" *Washington v. Gonyea*, 538 Fed. App'x 23, 25 (2d Cir. 2013) (quoting *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)). In addition, "due process requires 'that there be some evidence to support the findings made in the disciplinary hearing.'" *Zavaro v. Coughlin*, 970 F.2d 1148, 1152 (2d Cir. 1992). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by

the disciplinary board." *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 447 (1985) (emphasis added).

At this juncture, plaintiff has sufficiently pled that his 180-day confinement in SHU was atypical and deprived him of a liberty interest. *See Koehl v. Bernstein*, No. 10-CV-3808, 2011 WL 2436817, at *7 (S.D.N.Y. June 17, 2011) (concluding that allegations of 120 days in the SHU required discovery and fact-finding to determine "whether this intermediate sentence constitute[d] an atypical and significant hardship"), *report-recommendation adopted*, 2011 WL 4390007 (S.D.N.Y. Sept. 21, 2011).

At this early stage of the case, plaintiff's due process claim against Barnhart survives review and requires a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

Plaintiff also asserts due process claims against Solomondis and Kilner based upon the false misbehavior report. The law is well-settled that "the filing of unfounded charges is not per se a constitutional violation under section 1983[.]" *Freeman v. Rideout*, 808 F.2d 949, 950, 953 (2d Cir. 1986). There is an exception "when an inmate is able to show either (1) that he was disciplined without adequate due process as a result of the [allegedly false] report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right." *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015); *Mitchell v. Senkowski*, 158 Fed. App'x 346, 349 (2d Cir. 2005) ("The issuance of false misbehavior reports and provision of false testimony against an inmate . .. violates due process only where either procedural protections were denied that would have allowed the inmate to expose the falsity of the evidence against him, . . ., or where the fabrication of evidence was motivated by a desire to

retaliate for the inmate's exercise of his substantive constitutional rights ...." (internal citations omitted)).

Here, plaintiff has sufficiently alleged that "the disciplinary hearing adjudicating the false misbehavior report lacked due process," therefore, he "may pursue a constitutional claim against the author of that report." *See Nova v. Rocker,* No. 23-CV-6170, 2023 WL 8933430, at *4 (W.D.N.Y. Dec. 27, 2023) (applying *Willey* to grant the plaintiff's motion with respect to his due process claim against the author of a false misbehavior report).

Accordingly, plaintiff's due process claims against Solomondis and Kilner survive review and require a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

## III. MOTION FOR RECONSIDERATION

With the amended complaint, plaintiff provided an affidavit as an exhibit which the Court has construed as a second motion for reconsideration of the March 2026 Order. *See* Am. Compl. at 50-58. With the amended complaint, plaintiff repleads claims that were dismissed without prejudice in the March 2026 Order. *See generally* Am. Compl. Consequently, plaintiff's motion for reconsideration is denied as moot. *See Razzoli v. Richmond Univ. Med. Ctr.*, No. 23 CV 669, 2024 WL 1435895, at *2 (E.D.N.Y. Apr. 3, 2024) (citations omitted).

## IV. CONCLUSION

**WHEREFORE, it is hereby**

**ORDERED** that the amended complaint (Dkt. No. 28) is **ACCEPTED** for filing and is the operative pleading in this action; and it is further

**ORDERED** that the following claims survive review and require a response: (1) First Amendment retaliation claim against Flack; (2) Eighth Amendment excessive force and failure-to-intervene claims against Wilder and Calderson; and (3) Fourteenth Amendment due process claims against Barnhart, Solomondis, and Kilner; and it is further

**ORDERED** that the Clerk of the Court shall add C. Barnhart, J. Solomondis, and D. Kilner to the Docket Report as defendants; and it is further

**ORDERED** that the remaining claims are **DISMISSED**; and it is further

**ORDERED** that, upon receipt of the documents for service, the Clerk shall issue summonses and forward them, along with copies of the amended complaint, to the United States Marshal for service upon defendants; and it is further

**ORDERED** that a response to the amended complaint be filed by defendants, or counsel, as provided for in the Federal Rules of Civil Procedure;

**ORDERED** that plaintiff's motion for reconsideration is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on the parties in accordance with the Local Rules of Practice.

Dated: November 3, 2026

Elizabeth C. Coombe
U.S. District Judge